# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6736 | **DATE** | 6/10/2004 |
| **CASE TITLE** | Linea Internacional De Credito vs. Western Union Financial Services, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the foregoing reasons, defendant's motion to dismiss the complaint is granted. The complaint is dismissed without prejudice. Plaintiff is given until July 1, 2004 to file an amended complaint if it believes it can do so in accordance with this opinion. If plaintiff does not file an amended complaint within that time period, the cause will be dismissed with prejudice.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 1 4 2004 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | 8 |
| | Copy to judge/magistrate judge. | | 6/10/2004 | |
| | | U.S. DISTRICT COURT CLERK | date mailed notice | |
| KM | courtroom deputy's initials | 2004 JUN 10 PM 5:21 | KM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LINEA INTERNACIONAL DE CREDITO, S.A., an Ohio corporation, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 03 C 6736 |
| | ) |
| WESTERN UNION FINANCIAL SERVICES, INC., | ) ) |
| | ) |
| Defendant. | ) |

**DOCKETED**

.JUN 1 4 2004

### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is granted.

### BACKGROUND

Plaintiff Linea Internacional de Credito, S.A. ("LIC") brings this action against Western Union Financial Services, Inc. ("Western Union"), alleging the violation of antitrust laws.

The following facts are drawn from the complaint and taken as true for purposes of this motion. LIC provides financial services and does business under the names "Worldwide Financial Services" and "Worldwide Cash Card Company." Its customers are individuals in the United States "who purchase [unspecified] goods and services from [primarily Internet] vendors located in the Caribbean, Central

and South America."[1]  (Complaint, ¶ 5.)  These customers require a
means of paying for the goods and services purchased, and the
vendors must be able to make refunds or other payments to the
customers.  According to LIC, Western Union is "the largest, best-
known, and almost exclusive provider of money wire transfer
services available to individuals in the United States."  (Id., ¶
6.)

On June 18, 1999, LIC and Western Union entered into an
agreement pursuant to which Western Union would provide wire
transfer services to LIC's customers for a flat fee of $11.99 per
transfer of $5,000 or less.  This arrangement facilitated Internet
transactions between LIC's customers and Caribbean vendors.  As a
result of the agreement, LIC began to market its financial
services, gain new customers, and establish relationships with
Caribbean vendors.  Within two months, LIC became one of Western
Union's largest customers.

On November 15, 1999, Western Union terminated the contract
with LIC due to "suspicious activity."  LIC sought an explanation.
Western Union indicated that it had learned that some of the
Caribbean vendors were online casinos, and that transactions
between LIC's customers and these online casinos necessitated the
termination of the contract.

---

[1]  For simplicity, we will refer to these vendors as "Caribbean vendors,"
as does LIC.

LIC asserts that Western Union "used the gambling allegation as a pretext to cancel the contract," calculating that "it would make millions of dollars more if it could force [LIC's] customers to send money to The Caribbean for the hundreds of dollars Western Union charges individuals rather than the nominal sum of $11.99 it had agreed to charge LIC customers for such transactions." (Complaint, ¶ 12.) Then, according to LIC, Western Union attempted to "eliminate all competition for the money transfer market." (Id.) "Within days Western Union established the Western Union Cash Card and The Western Union MasterCard program and entered into arrangements with the same online casinos that it alleged were engaging in 'suspicious activities' with LIC customers." (Id., ¶ 13.)

Because Western Union terminated the contract, LIC was unable to serve its customers and could not honor relationships with Caribbean vendors, thereby losing millions of dollars. There is no other provider of money wire transfer services available to LIC. The complaint also alleges that "millions of customers located throughout the United States . . . are deprived of a low cost alternative to the expensive wire transfer services offered by Western Union." (Complaint, ¶ 14.)

LIC asserts that Western Union violated the Sherman Act, 15 U.S.C. § 2, and the Clayton Act, 15 U.S.C. § 15. LIC seeks treble damages, attorney's fees and costs, and requests "[t]hat Western

Union be enjoined from refusing to provide the wire transfer services to which it agreed in the contract to LIC and its customers and vendors." (Complaint, Prayer for Relief, at 6.)

Western Union now moves to dismiss the complaint.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M. Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir.), cert. denied, 519 U.S. 1008 (1996).

Western Union first argues that LIC has no protectible legal interest and thus cannot assert an antitrust claim as a matter of law, citing Maltz v. Sax, 134 F.2d 2, 5-6 (7th Cir. 1943). In Maltz, the plaintiff manufactured and sold gambling devices called

"punchboards." He brought an action under the Sherman Act alleging that he was the victim of an unlawful combination and conspiracy. The district court granted defendants' motion to dismiss on the ground that the use and sale of punchboards was unlawful and against public policy. The Court of Appeals affirmed the dismissal, stating:

> [T]he damages claimed were for an injury to something which the law did not recognize as a legal right. Plaintiff's business was the making and selling of goods which could only be used by purchasers in furtherance of the business of gambling. Plaintiff has no legal right in a business, the conduct of which was gambling, for which he may obtain protection either in an action at law, or by a suit in equity. He had no legal rights to protect. Therefore defendants could not invade them.
> . . .
> While the business of making and selling gambling machines is not in itself gambling, it is widely held that one who sells a gambling mechanism, useful for no business other than gambling, may not recover the purchase price of such gambling apparatus. More consistent with our general public policy is a construction of the Sherman Act, which holds that one conducting a business inseparably connected with gambling (such as making gambling machines) may not recover in an action at law for injury to its business through a competition-squeezing combination of his competitors.

Id. (citations omitted).

Western Union argues that Maltz forecloses LIC's claims. Maltz is distinguishable, however, because there, plaintiff's business was "the making and selling of goods which could only be used by purchasers in furtherance of the business of gambling" and was "inseparably connected with gambling." Id. (emphasis added). All that we can tell about LIC's business at this juncture, though,

is that Western Union asserted that "transactions between LIC
customers and on-line casinos necessitated the termination of the
Contract." (Complaint, ¶ 10.) It is not clear from the complaint
that plaintiff's business is inseparably connected with gambling or
that its services could only be used in furtherance of gambling.
Therefore, Maltz does not control.

Western Union also contends that LIC fails to state a claim
under the Sherman and Clayton Acts. On this issue, we agree with
Western Union. Section 2 of the Sherman Act, 15 U.S.C. § 2,
proscribes monopolization and attempted monopolization of trade.
Private civil actions to enforce the Sherman Act are allowed under
the Clayton Act, 15 U.S.C. § 15. LIC alleges that Western Union
"has monopolized the money wire transfer market available to
individuals in the United States." (Complaint, ¶ 6.)

The elements of a monopolization claim under § 2 of the
Sherman Act are that the defendant (1) has a monopoly in the
relevant market; and (2) willfully acquired or maintained that
monopoly through anti-competitive conduct as opposed to superior
product, business acumen, or accident. See Endsley v. City of
Chicago, 230 F.3d 276, 282 (7th Cir. 2000) (citing Eastman Kodak
Co. v. Image Technical Servs., 504 U.S. 451, 481 (1992)). Although

---

[2] Western Union attaches an Ohio Trade Name Filing to its brief that
indicates that LIC has a trade name, inter alia, of "Charitable Gaming Inc."
Plaintiff uses other trade names as well, and this document simply does not tell
us very much about the exact nature of plaintiff's business.

we cannot apply a heightened pleading standard in antitrust cases,
"plaintiffs still must set forth facts sufficient to create an
inference that defendant had enough market power to create a
monopoly" in order to survive a motion to dismiss. Endsley, 230
F.3d at 282.

LIC fails to properly allege the first element of a Sherman
Act claim--that defendant has a monopoly in a relevant market. In
paragraph 5 of the complaint, plaintiff purports to define two
markets: (1) "a market of customers located throughout the United
States, including thousands of customers in the Northern District
of Illinois, for inexpensive money wire transfer services to
vendors located in The Caribbean"; and (2) a "similar market" of
"vendors who sell goods and services to United States customers via
the Internet who need to receive funds from said customers and, on
occasion, make refunds or other payments to customers in the United
States." The same paragraph includes an explanation of why
plaintiff has excluded bank wire transfer services, credit cards,
and checks from its definition of the relevant market.[3] The
complaint then goes on to allege that Western Union has monopolized

---

[3] Were plaintiff to have properly alleged a monopoly in the first market
set forth in paragraph 5 of the complaint, we do not agree with defendant that
the inclusion of the word "inexpensive" would render the market improperly
defined as a matter of law. It is true that a legally sufficient product market
must include products that have reasonable interchangeability for the purposes
for which they are produced. See Rohlfing v. Manor Care, Inc., 172 F.R.D. 330,
345 (N.D. Ill. 1997). But plaintiff adequately sets forth allegations in
paragraph 5 regarding why it did not include certain money transfer services in
its definition. Therefore, we cannot say that its definition of the relevant
market is improper as a matter of law. Rather, it is a question of fact that
cannot be decided at the motion to dismiss stage.

only "the money wire transfer market available to individuals in
the United States." (Id., ¶ 6.) Therefore, LIC's exact definition
of the relevant market is unclear. Moreover, the facts set forth
in the complaint are insufficient to permit an inference that
Western Union had a monopoly in any market. The complaint alleges
merely that "Western Union is the largest, best-known and almost
exclusive provider of money wire transfer services available to
individuals in the United States. As a result, Western Union has
monopolized the money wire transfer market available to individuals
in the United States." (Id. (emphasis added).) This non sequitur
is insufficient to allege a monopoly.

LIC also fails to allege the second element of a Sherman Act
claim--that Western Union willfully acquired or maintained
monopoly power through anti-competitive conduct. The complaint
fails to allege that Western Union engaged in conduct that was
unjustified. Notably, LIC does not contend that Western Union was
not entitled to terminate the contract or that its alleged conduct
constituted a breach of contract. And, as defendant points out,
even a monopolist has no duty to help its competitors. See Olympia
Equip. Leasing Co. v. Western Union Tel. Co., 797 F.2d 370, 376
(7th Cir. 1986) ("A monopolist has no duty to reduce its prices in
order to help consumers . . . and no duty to extend a helping hand
to new entrants . . . . If a monopolist does extend a helping hand,
though not required to do so, and later withdraws it as happened in

this case, does he incur antitrust liability? We think not.").

Because LIC fails to state a claim for antitrust violations, the complaint must be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint is granted. The complaint is dismissed without prejudice.

Plaintiff is given until July 1, 2004 to file an amended complaint if it believes it can do so in accordance with this opinion. If plaintiff does not file an amended complaint within that time period, the cause will be dismissed with prejudice.

DATE:         June 10, 2004

ENTER:        _____

                John F. Grady, United States District Judge