# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINEA INTERNACIONAL DE CREDITO, S.A., an Ohio corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 03 C 6736 |
| WESTERN UNION FINANCIAL SERVICES, INC., | )<br>)<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

The court has under advisement defendant's motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is granted.

Plaintiff Linea Internacional de Credito, S.A. ("LIC") brings this antitrust action against Western Union Financial Services, Inc. ("Western Union"), alleging the violation of the Sherman Act, 15 U.S.C. § 2, and the Clayton Act, 15 U.S.C. § 15. We outlined the facts of this case in our previous opinion granting defendant's motion to dismiss the original complaint, and it is unnecessary to repeat them here.

In our previous opinion, we found that plaintiff failed to state a monopolization claim under the Sherman and Clayton Acts. Plaintiff has filed a First Amended Complaint, which defendant now

moves to dismiss. Defendant contends that plaintiff's claim is foreclosed by Maltz v. Sax, 134 F.2d 2 (7th Cir. 1943). Defendant also argues that plaintiff again fails to properly allege the elements of a monopolization claim: that defendant has a monopoly in the relevant market and that defendant willfully acquired or maintained monopoly power through anti-competitive conduct.

As it did in its prior motion to dismiss, defendant cites Maltz and argues that plaintiff has no protectible legal interest in conducting its business and thus cannot assert an antitrust claim as a matter of law. In Maltz, the Seventh Circuit invoked public policy in affirming the dismissal of an antitrust claim brought by a business that was "inseparably connected with gambling," stating that plaintiff "had no legal rights to protect." 134 F.2d at 5-6. In our earlier opinion, we held that Maltz does not apply here because the exact nature of plaintiff's business is not clear, and defendant has not shown that plaintiff's business is inseparably connected with gambling or that its services could only be used in furtherance of gambling.

Defendant now presents a new twist on its Maltz argument. It has filed a Supplemental Memorandum in support of its motion and has attached a copy of an opinion from the Southern District of New York in United States Small Business Administration v. The Haukedahl Foundation, No. 04 Civ. 1744 (JSR), 2004 WL 1192396 (S.D.N.Y. May 27, 2004). In that case, the Small Business

Administration ("SBA"), acting as Receiver for two entities that had previously obtained a judgment in a separate proceeding against Mark S. Haukedahl and certain of his corporate alter egos, sought to restrain and attach assets of other entities "in the web of ostensibly independent organizations that were, in actuality, effectively controlled by [Haukedahl] and used by him not only to further and/or conceal his fraudulent schemes but also to receive fraudulently conveyed funds." 2004 WL 1192396, at *1. One of the respondent entities was LIC, the plaintiff in this action. The SBA obtained a default judgment against plaintiff and several of the other entities involved in the amount of approximately $4.4 million.

Defendant asserts that "having been found by [the District Court for the Southern District of New York] to have been a participant in Haukedahl's fraudulent scheme, LIC cannot assert a legal right to conduct its operations, and thus cannot claim a 'violation of *legal right*' under antitrust laws." (Supplemental Memorandum at 3.) This overstates the matter. No judgment for fraud was obtained against LIC, and LIC was not found to have been a participant in the fraud. Rather, the SBA alleged that Haukedahl fraudulently conveyed proceeds of his fraud to other entities allegedly under his control (including LIC) and obtained a default judgment to attach the assets of those entities. Under these facts, defendant still has not shown that LIC was conducting an

illegal business. It is conceivable that although funds may have been fraudulently conveyed to LIC by Haukedahl, the business itself was legitimate. Therefore, Maltz is still inapplicable.

However, plaintiff again falls short in regard to stating the first element of a Sherman Act claim--a monopoly in a relevant market. The original complaint was unclear because it purported to define two different markets. Moreover, the facts set forth in the complaint were insufficient to permit an inference that Western Union has a monopoly in any market. The First Amended Complaint suffers from the same deficiencies. Plaintiff alleges that "there exists a market of customers located throughout the United States, including thousands of customers in the Northern District of Illinois, for inexpensive money wire transfer services to pay vendors located in The Caribbean." (Complaint, ¶ 5.) The next paragraph, however, alleges that "Western Union has a monopoly of the money wire transfer means available to individuals in the United States in that Western Union is able to unilaterally determine who may wire transfer money and set the prices at which they may do so and thus control the business." (Complaint, ¶ 6.) Again, the purported monopoly allegation does not match up with the definition of the relevant market. (And the monopoly allegation does not even allege a monopoly of a *market*, but merely the means of wire transferring money.) To confuse matters further, plaintiff

alleges a variety of definitions of the relevant market in its response brief, each definition slightly different.

Furthermore, aside from the fact that it is somewhat nonsensical, the conclusory allegation that defendant "is able to unilaterally determine who may wire transfer money and set the prices at which they may do so and thus control the business" is insufficient to permit an inference that Western Union has a monopoly in any market. See Endsley v. City of Chicago, 230 F.3d 276, 282 (7th Cir. 2000) (where a plaintiff fails to identify any facts from which the court can infer that defendants had sufficient market power to have been able to create a monopoly, plaintiff's § 2 claim may properly be dismissed). Because plaintiff has failed to allege the first element of a Sherman Act claim, we need not address defendant's argument that plaintiff also fails to allege the second element or that it has suffered antitrust injury.

In its response to defendant's motion, plaintiff maintains that "[b]asically, this is an 'essential facilities' claim." (Response at 4.) The essential facilities doctrine "imposes upon a firm controlling an essential facility--that is, a facility that cannot reasonably be duplicated and to which access is necessary if one wishes to compete--the obligation to make that facility available to competitors on nondiscriminatory terms." Fishman v. Estate of Wirtz, 807 F.2d 520, 539 (7th Cir. 1986). An essential facilities claim requires that the plaintiff allege: (1) that

defendant is a monopolist and controls an essential facility; (2) that the facility could have been provided to plaintiff by defendant; (3) that defendant denied access to the essential facility; and (4) that a duplicate facility could not reasonably be provided. See Midwest Gas Servs., Inc. v. Indiana Gas Co., 317 F.3d 703, 713-14 (7th Cir. 2003). According to plaintiff, "Western Union is the only provider of the essential facilities (i.e.: wire transfer services available to individuals) available to LIC." (Response at 6.)

Unfortunately for plaintiff, it does not allege the elements of an essential facility claim in the First Amended Complaint, even in a conclusory way. Nor does it appear that it could do so successfully. The bald recharacterization of defendant's services as an "essential facility" does not render unnecessary the requirement that plaintiff allege a monopoly, which it has failed to do. Moreover, plaintiff fails to properly allege that defendant's services are an essential facility. Although plaintiff asserts in paragraph 12 of the First Amended Complaint that "[t]here is no other source of wire transfer services available to LIC customers other than Western Union," we cannot reasonably infer that the wire transfer services are an essential facility. Plaintiff does not explain why its customers have no other source of wire transfer services, such as banks. Plaintiff only alleges that its customers "do not have existing banking relationships that

allow them to <u>readily</u> wire transfer funds to the Caribbean." (First Amended Complaint, ¶ 5 (emphasis added).) Moreover, plaintiff alleges that payment via check or credit card would impede customers' ability to "promptly and efficiently" complete their transactions, not that those alternatives would be impossible. On these facts, plaintiff fails to state an essential facility claim. "[T]he most economical route is not an essential facility when other routes are available." <u>Midwest Gas</u>, 317 F.3d at 714; <u>see also</u> <u>JamSports & Entm't, LLC v. Paradama Prods., Inc.</u>, 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004) (noting that an "essential facility" does not mean the best, most profitable, or preferable; "essential means essential").

Because plaintiff fails to state a claim for antitrust violations, the First Amended Complaint will be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the First Amended Complaint is granted. Because we see no possibility of a successful amendment to the complaint, this cause will be dismissed with prejudice.

DATE:    February 16, 2005

ENTER:   _____
         John F. Grady, United States District Judge